## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| **JOHN DOE**[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No.: _____ |
| | ) | |
| **BOARD OF TRUSTEES OF** | ) | Jury Trial Requested |
| **ST. MARY'S COLLEGE OF MARYLAND** | ) | |
| 18952 E. Fisher Road | ) | |
| St. Mary's City, Maryland 20686 | ) | |
| | ) | |
| <u>SERVE ON</u>: | ) | |
| Honorable Nancy K. Kopp, Treasurer | ) | |
| State of Maryland Treasurer's Office | ) | |
| Goldstein Treasury Building | ) | |
| 80 Calvert Street | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| Office of the Attorney General | ) | |
| 200 St Paul Place | ) | |
| Baltimore, Maryland 21202 | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

Plaintiff John Doe ("**Doe**" or "**Plaintiff**") files this Verified Complaint against Defendant

the Board of Trustees of St. Mary's College of Maryland (the "**College**" or "**Defendant**"), and in

support thereof alleges as follows:

---

[1] Contemporaneously with the filing of this action, the Plaintiff filed a Motion for Permission to Proceed Under Pseudonym and to Omit his Address from the Caption in the Complaint and to File the Declaration in Support Under Seal. The Motion also contains an exhibit, filed under seal, which reveals the name and address of the actual Plaintiff. A copy of the sealed exhibit containing the Plaintiff's identity will be served on the Defendant along with the Complaint and the Motion.

## I.  NATURE OF THE ACTION

1.       The facts of this matter, and the actions of the Defendant in this matter, are evidence of administrative quasi-judicial system at a public college, so poorly conceived and illegally administered, and so grievously flawed that it rises to the level of a blatant, systemic and actionable violation of the Plaintiff's civil rights.

2.       In early September 2017, Jane Roe, an undergraduate student at the College (hereinafter "**Jane Roe**" or "**Roe**") and the Plaintiff met at a party on campus. At this point in time the Plaintiff has begun his third year of his undergraduate studies towards a bachelor's degree from the College.

3.       Subsequent to that meeting in early September 2017, Roe and the Plaintiff went to the Plaintiff's apartment and engaged in intimate activities. Neither party was intoxicated. No one witnessed the encounter except the Plaintiff and Jane Roe.

4.       Jane Roe did not stay overnight with the Plaintiff, instead electing to leave and go to her own student housing.

5.       Subsequent to their first interaction, Roe and the Plaintiff texted on an ongoing, daily basis, as well as exchanged messages via Snapchat and other social media platforms.

6.       On the evening of September 30, 2017, Roe and the Plaintiff met at a party on the Defendant's campus.

7.       Neither party was intoxicated during their interactions on the evening of September 30, 2017.

2

8.    Roe left the party with the Plaintiff on the evening of September 30, 2017, and went to the Plaintiff's on campus housing.

9.    On the evening of September 30, 2017 and into the morning of October 1, 2017, Jane Roe and the Plaintiff engaged in intimate activities for a second time. Consistent with the prior encounter, no one witnessed the encounter except the Plaintiff and Jane Roe.

10.    Consistent with the first encounter between the Plaintiff and Jane Roe, Roe did not stay the night at the Plaintiff's on campus apartment and left after the intimate encounter with the Plaintiff.

11.    Some four months later, on January 22, 2018, the Plaintiff was visited by a College Police Officer, acting as agent for the Defendant, who hand delivered a document entitled *Notice of Investigation*. A true and correct copy of the Notice of Investigation, which has been redacted to preserve the anonymity of Jane Roe and the Plaintiff, is attached hereto as Exhibit A, and incorporated by reference as though set forth fully at length.

12.    The provision of the College's Policy Against Sexual Misconduct that the College had charged the Plaintiff with violating is entitled *Non-Consensual Sexual Intercourse (Rape)*. The definition of this portion the Policy also includes incest and statutory rape.

13.    Prior to the College Police Officer's visit on January 22, 2018, the Plaintiff was completely unaware of any complaint or any College administrative investigation concerning him.

14.    Contained within the Notice of Investigation was a paragraph entitled "No Contact Order". The paragraph provides as follows:

3321593.1

00000.361

*The College is issuing a no-contact order between you and [Jane Roe] as of today, January 22, 2017. It shall remain in effect until the investigation process has concluded, at which time you will be notified of the same.*

*Under a No Contact Order both parties are prohibited from having any verbal or non-verbal contact or interaction with the other party: (1) in person, (2) via mail, telephone, or electronic means, including but not limited to text messages, email, social media or other electronic devices, or (3) contact through a third party.*

*Any violation of this directive by either party could result in disciplinary action against the responsible individual. Violations should be reported to the Office of Public Safety (240-895-4911).*

*The College considers No Contact Orders to be confidential and expects students to treat them as such. If a student is harmed due to another student's sharing or publicizing a No Contact Order (i.e., verbally, through social media), such an act may be considered retaliation under College policy and the responsible student may be subject to disciplinary action.*

Exhibit A, at Paragraph 5.

15.    By issuing the No Contact Order, the College unilaterally restricted the Plaintiff's right of travel and association without any due process afforded to the Plaintiff.

16.    Prior to January 22, 2018, there was no communication from the College to the Plaintiff regarding and allegations or investigation, nor was there any hearing, nor any questioning of the Plaintiff whatsoever prior to the College's issuance of the No Contact Order.

17.    The Plaintiff was not privy to the existence of any factual hearing or any fact finding due process whatsoever prior to the visit from the College Police on January 22, 2018.

18.    Subsequent to the delivery of the Notice of Investigation and the issuance of the No Contact Order, the College began an internal Title IX investigation, led by the Defendant's Title IX coordinator, Michael Dunn.

19.    Mr. Dunn was joined by Michelle DiMenna, who works at The College as an Institutional Research Analyst II.

20.     The Plaintiff was interviewed twice by Mr. Dunn and Ms. DiMenna. The first interview occurred on February 9, 2018 (the "**First Interview**"). The second interview was conducted on February 26, 2018 (the "**Second Interview**").

21.     At no point during the investigation was the Plaintiff allowed to cross examine or question his accuser, Jane Roe. Not only do the College's Procedures contain no mechanism for a trial, nor for an opportunity to face the Plaintiff's accuser, the No Contact Order *expressly prohibited the Plaintiff from doing so.*

22.     The ultimate result of the College's investigation wrongly found the Plaintiff responsible for violating the Policy. By a letter dated May 11, 2018 (hereinafter the "**Sanctions Letter**"), Mr. Dunn, on the College's behalf, levied a sanction against the Plaintiff of a one year suspension from the College, with the ability to reapply with certain conditions, but with no guarantee that the Plaintiff's application would be granted or that he could return to complete his undergraduate degree at the College.

## II.     THE PARTIES

23.     The Plaintiff is an adult male individual who is a citizen of the Commonwealth of Pennsylvania. At all relevant times, the Plaintiff's permanent home residence is located in the Commonwealth of Pennsylvania, while he did temporarily board at the College, which is located in the State of Maryland.

24.     The Defendant is a public college organized under the laws of the State of Maryland, with an address at 47645 College Drive, St Mary City, Maryland, 20686. The College's Bylaws vest authority to govern the College in the Board of Trustees.

3321593.1                                                                                                          00000.361

### III.   **JURISDICTION AND VENUE**

25.     For diversity jurisdiction purposes, the Plaintiff is a citizen of the Commonwealth of Pennsylvania and the College is a citizen of the State of Maryland.

26.     This Court has original diversity jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

27.     This Court also has original federal question jurisdiction under Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681, *et seq.,* Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* 42 U.S.C. § 1981, and 28 U.S.C. § 1331, and jurisdiction over related state common law claims under the principles of ancillary and/or pendant jurisdiction pursuant to 28 U.S.C. § 1367.

28.     Venue is proper in the District of Maryland pursuant to 12 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to John Doe's claims and injuries occurred in the District of Maryland.

### IV.   **FACTUAL BACKGROUND**

29.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

30.     The lack of due process prejudiced the Plaintiff.

31.     The Do Not Contact Order was issued without any interview, or questioning or investigation of the Plaintiff or any opportunity for the Plaintiff to defend himself against the accusations.

3321593.1

00000.361

32.     The College's Procedures require the Title IX Coordinator and the Investigator to be separate persons, but Michael Dunn disregarded that and served in the roles of Title IX Coordinator, investigator, and judge and jury in a clear violation of the College's Procedures.

33.     The deadlines for Jane Roe to submit certain materials were extended twice without explanation. Upon information and belief, the College went out of its way to favor Jane Roe in this way during the Investigation.

34.     Because of other Title IX litigation matters reported in the press involving the Defendant, the Plaintiff believes and avers that the Defendant is under significant external pressure with respect to the way it investigates and adjudicates alleged violations of its Policy.

35.     The College has published a written policy entitled the St. Mary's College of Maryland Policy Against Sexual Misconduct (hereinafter the "**Policy**"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit A.

36.     The College has published a written policy which creates the procedural framework for investigating claims of sexual misconduct, entitled *The St. Mary's College of Maryland Procedures to Resolve Complaints of Sexual Misconduct against a Student* (hereinafter "**Procedures to Resolve Complaints**"), a true and correct copy of which is attached hereto and incorporated herein at Exhibit B.

37.     The College has published an Anti-Harassment Statement on its website, a true and correct copy of which is attached hereto and incorporated herein as Exhibit C (*see* http://www.smcm.edu/campus-rights/wp-content/uploads/sites/66/2017/12/171201-Anti-Harassment-Statement.pdf, viewed August 6, 2018).

38.     In the Sanction Letter, the College sets forth a quote from the Procedures to Resolve Complaints: According to the Procedures to Resolve Complaints of Sexual Misconduct Against

7

Students (the **"Procedures"**), *"If the Responding Party is found responsible for a violation of the Policy, the Title IX Coordinator or Deputy will provide the Investigator(s) with the Parties' Impact Statements and a copy of the Responding Party's disciplinary history, which may be considered by the Investigator(s) in determining a sanction(s)."*

39.     Both parties submitted impact statements, which were provided to the parties on May 7, 2018.

40.     In the instant matter, the College fails to comply with its own Procedures excerpted in the Sanctions Letter. According to the Procedures, the Title IX Coordinator or Deputy will provide the Investigator(s) with the Parties' Impact Statements and a copy of the Responding Party's disciplinary history. This sentence, which almost certainly was crafted by the College's legal counsel, requires that the Title IX Coordinator and Investigator *be separate persons.* In the matter before this Court, Michael Dunn served both roles.

41.     Mr. Dunn was and is the College's Title IX Coordinator, and was also the investigator on the matter involving the Plaintiff and was the person who evaluated the evidence and rendered a decision. This is in blatant disregard of the College's own Procedures.

**COUNT I:**
**Breach of Contract**

42.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

43.     At all times relevant hereto, a contractual relationship existed between the College and the Plaintiff through the College's policies and procedures governing the Student Disciplinary System, including but not limited to the provisions of the Policy, the Procedures to Resolve Complaints and the Anti-Harassment Statement.

3321593.1

00000.361

44.     The College, in its organizational documents that are communicated to its students, including the Plaintiff, makes express contractual commitments to students involved in the College's disciplinary processes.

45.     Specifically, the College promises students, "*St. Mary's College of Maryland is fully committed to equal employment and educational opportunities for its employees and students. The College does not discriminate or condone discrimination or harassment in the workplace or academic setting, on the basis of race, color, religion, sex, national origin, gender identity/expression, sexual orientation, ethnicity, age, marital status, physical or mental disability, protected veteran status, or any other characteristic protected by law.*" Exhibit B, at Section IV, p. 9.

46.     Specifically, the College promises students, "*[t]hese Procedures to Resolve Complaints of Sexual Misconduct against a Student (Student Procedures) provide a process for the prompt **and equitable** investigation and adjudication of complaints of sexual and gender-based discrimination, sexual and gender-based harassment, sexual assault, relationship violence and stalking (collectively referred to as Sexual Misconduct) against a student enrolled at St. Mary's College of Maryland (the College).*" Exhibit B at 1 (emphasis added).

47.     In its Anti-Harassment Statement published on its website, the College promises to "***not tolerate harassment or** discrimination of any kind, including harassment or **discrimination based on sex, gender**, gender identity, gender expression, or sexual orientation.*" A true and correct copy of the Anti-Harassment Statement is attached hereto as Exhibit C, paragraph 1 (emphasis added). (Anti-Harassment Statement published at http://www.smcm.edu/tothepoint/wp-content/uploads/sites/71/2015/08/anti-harassment-statement.pdf, last viewed August 6, 2018).

3321593.1                                                                                           00000.361

48.     The College, through its investigators, was required to act in accordance with the terms of the Policy and the Procedures to Resolve Complaints and Anti-Harassment Statement in addressing Jane Roe's allegations against the Plaintiff; in conducting its investigation; in applying the provisions of the Policy, in making the decision whether to file charges against the Plaintiff; in adjudicating the charges; and in deciding on sanctions.

49.     For all the above reasons, the College has materially breached its contracts with the Plaintiff by failing to provide *"a process that is fundamentally fair, and free of bias or prejudice,"* failing to give adequate notice, failing to perform a fair, thorough, and nondiscriminatory investigation, and failing to comply with its policies and procedures and Anti-Harassment Statement.

50.     In addition to the express contractual obligations between the College and the Plaintiff referred to throughout this Complaint, there is an implied duty of good faith and fair dealing in the contracts between the College and the Plaintiff, which was violated repeatedly as a result of the acts and omissions described herein.

51.     As a direct, proximate and foreseeable consequence of the College's numerous material breaches of contract, the Plaintiff has suffered monetary damages and other direct and consequential damages.

52.     The Plaintiff is entitled to recover damages for the College's breach of its contractual obligations and duties.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

3321593.1

00000.361

**COUNT II:**
**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.**

53.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

54.     Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681- 1688, provides in pertinent part that *"[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."* 20 U.S.C. § 1681(a).

55.     Title IX applies to all public and private educational institutions that receive federal funds, including colleges and universities. The College is a recipient of federal funds and, therefore, is bound by Title IX and its regulations.

56.     Title IX is enforceable through an implied right of action affording an individual discriminated against on the basis of his or her gender monetary damages and equitable relief.

57.     Under Title IX, schools must *"[a]dopt and publish grievance procedures providing for the **prompt and equitable resolution of student . . . complaints** alleging any action which would be prohibited by [Title IX or its regulations]."* 34 C.F.R. § 106.8(b) (emphasis added). Both the Department of Education and US Department of Justice have set forth this requirement by way of regulation. *See* 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice).

58.     In 2001, the Office for Civil Rights (**"OCR"**) of the Department of Education, the office that administratively enforces Title IX, promulgated regulations pursuant to notice-and-comment rulemaking in a document entitled *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (the **"2001 Guidance"**). Available at https://www2.ed.gov/offices/OC R/archives/pdf/shguide.pdf (last viewed August 6, 2018). In addition, the OCR also issued a Dear Colleague Letter on September 27, 2017 (the **"2017 DCL"**).

3321593.1                                                                                              00000.361

In addition, the OCR issued a document entitled "Q&A on Campus Sexual Misconduct" (the "**2017 Q&A**"), published at https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf, last viewed August 6, 2018).

59.     Title IX's regulations, including the 2001 Guidance and 2017 DCL and 2017 Q&A, have the force and effect of law, because they affect individual rights and obligations and were the product of notice-and-comment rulemaking. The 2017 DCL and 2017 Q&A allow Colleges and Universities to adopt a tougher "clear and convincing" standard in determining a student's guilt or innocence, rather than the less stringent "clear and convincing" standard, which the OCR notes favors the accuser. 2017 Q&A at fn. 19. The OCR also no longer discourages cross-examination of witnesses. *Id.*, at p. 5.

60.     OCR's 2001 Guidance "identified a number of elements in evaluating whether a school's grievance procedures are prompt and equitable...." *Id.* at 20. These elements apply to private and public colleges and universities and include: "Notice to students ... of the [school's] procedure" and "*Adequate, reliable, and impartial investigation of complaints,* including the *opportunity to present witnesses and other evidence.*" *Id.* (emphasis added).

61.     OCR's 2001 Guidance further stated that "according due process to both parties *involved, will lead to sound and supportable decisions.*" *Id.* at 22 (emphasis added)

62.     Title IX bars the imposition of university discipline where gender is a motivating factor.

63.     Both on their face and as applied in this case, the College's Policy Against Sexual Misconduct and the Procedures to Resolve Complaints violate Title IX. The violations include, but are not limited to, engaging in selective enforcement and reaching an erroneous outcome.

3321593.1

00000.361

64.     Throughout the disciplinary process, the College treated the Plaintiff unfairly because of his sex, including, among other things, by failing to give the Plaintiff basic due process protections such as the right to confront his accuser, to receive copies of relevant evidence, and to present witnesses and other evidence on his own behalf; and by conducting an inadequate, unreliable, and biased investigation of the complaint against him.

65.     The investigative team's one-sided investigation demonstrated pervasive gender bias against the Plaintiff and in favor of Jane Roe.

66.     Upon information and belief, statistics within the exclusive possession and control of the College will show a pattern of intentional discriminatory conduct and selective enforcement.

67.     The College's institutionalized gender bias against males accused of sexual assault results from classifications based on archaic assumptions. The College treats female complainants differently than male respondents based on the College's outdated attitudes about females and overbroad generalizations about male and female sexual traits and behaviors.

68.     The outcome of the College's grievously flawed proceeding against the Plaintiff was clearly erroneous, and was motivated on the basis of sex. The College was on notice of, and was deliberately indifferent to, the serious flaws in the investigation, the lack of equity and fairness, and the gender bias that is infused in the investigation and adjudication process. The implementation of the Procedures was motivated by and premised on archaic assumptions and stereotypical notions of the sexual behavior of male and female students- i.e., male students are perceived as sexual aggressors and perpetrators and female students are perceived as sexual victims.

69.     The College's conduct was so severe, pervasive, and objectively offensive that it denied the Plaintiff equal access to education that Title IX is designed to protect.

3321593.1

00000.361

70.     The College has punished the Plaintiff with one of its most severe sanctions available - a one year suspension going into his senior undergraduate year with no guarantee of re-admission and a permanent record of the alleged violation - with little evidence and as a result of a process that contains virtually no procedural safeguards for accused students and is permeated with gender bias.

71.     The College has effectively expelled the Plaintiff from the College based on the unsubstantiated, uncorroborated allegation of Jane Roe, a single College student.

72.     As a direct, proximate, and foreseeable consequence of the College's aforementioned Title IX violations, the Plaintiff has sustained and will continue to sustain significant damages, including, but not limited to, severe emotional distress, damages to physical well being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

73.     As a result of the foregoing, the Plaintiff is entitled to injunctive relief and damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT III:
### Negligence

74.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

75.     The College owes duties of care to the Plaintiff independent of its contractual duties, including, without limitation, a duty of reasonable care in selecting, training and supervising investigators to implement the Procedures to Resolve Complaints.

76.     The College breached its duties of care owed to the Plaintiff by failing adequately to select, train and supervise the investigative team and thereby allowing it to conduct a deeply flawed investigation, discriminate against John based on gender stereotypes, produce flawed and biased Reports, and reach unwarranted and erroneous conclusions.

77.     As a direct, proximate, and foreseeable consequence of the College's negligence, the Plaintiff has sustained and will continue to sustain significant damages, including, but not limited to, severe emotional distress, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT IV:
### Intentional Infliction of Emotional Distress

78.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

79.     The acts and omissions of the College and its investigators were willful and intentional.

3321593.1

00000.361

80.     The College knew or should have known that the investigators' systematically improper acts and omissions set forth above would cause the Plaintiff severe emotional distress.

81.     The College's conduct and that of the investigators was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community.

82.     The College's conduct and that of the investigators was the direct and proximate cause of the Plaintiff's severe emotional distress, which includes symptoms of depression, extreme anxiety, loss of the ability to concentrate, intense feelings of hopelessness and sadness, and the inability to sleep through the night.

83.     As a direct, proximate, and foreseeable consequence of the aforementioned conduct, the Plaintiff has sustained significant damages, including but not limited to, severe emotional distress, damages to physical well-being, emotional and psychological damages, damages to reputation, and other direct and consequential damages.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT V:
### Negligent Infliction of Emotional Distress

84.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

85.     The acts and omissions of the College and its investigators were negligent.

86.     The College knew or should have known that the investigators' systematically improper acts and omissions set forth above would cause the Plaintiff severe emotional distress.

16

3321593.1                                                              00000.361

87.    The College's conduct and that of the investigators was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community.

88.    The College's conduct and that of the investigators was the direct and proximate cause of the Plaintiff's severe emotional distress, which includes symptoms of depression, extreme anxiety, loss of the ability to concentrate, intense feelings of hopelessness and sadness, and the inability to sleep through the night.

89.    As a direct, proximate, and foreseeable consequence of the aforementioned conduct, the Plaintiff sustained significant damages, including but not limited to, severe emotional distress, damages to physical well-being, emotional and psychological damages, damages to reputation, and other direct and consequential damages.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT VI:
### Unfair Trade Practices and Consumer Protection Law,
### 73 Pa. C.S. § 201-1, *et seq.*

90.    The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

91.    At all relevant times, the College offered for sale to the public educational goods and services.

92.    At all relevant times, the Plaintiff was a purchaser of educational goods or services for personal, family or household purposes.

93.     In connection with the sale of its educational goods and services and collection of tuition, fees and costs related thereto, the College committed various unfair and deceptive acts and practices in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. § 201-1, *et seq.* ("UTPCPL"), including, but not limited to the following acts, omissions, warranties, and misrepresentations:

94.     Representing to the Plaintiff that: "St. Mary's College of Maryland is fully committed to equal employment and educational opportunities for its employees and students. The College does not discriminate or condone discrimination or harassment in the workplace or academic setting, on the basis of race, color, religion, sex, national origin, gender identity/expression, sexual orientation, ethnicity, age, marital status, physical or mental disability, protected veteran status, or any other characteristic protected by law." Exhibit A, at Section IV, p. 9.

95.     Representing to the Plaintiff that: "*[t]hese Procedures to Resolve Complaints of Sexual Misconduct against a Student (Student Procedures) provide a process for the prompt **and equitable** investigation and adjudication of complaints of sexual and gender-based discrimination, sexual and gender-based harassment, sexual assault, relationship violence and stalking (collectively referred to as Sexual Misconduct) against a student enrolled at St. Mary's College of Maryland (the College).*" Exhibit B at 1 (emphasis added).

96.     Representing to the Plaintiff that the College will "*not tolerate harassment or discrimination of any kind, including harassment or **discrimination based on sex, gender**, gender identity, gender expression, or sexual orientation.*" *See,* Exhibit C, paragraph 1 (emphasis added).

3321593.1

00000.361

97.     Representing to the Plaintiff that he would not be discriminated against, treated unequally compared to female students, or mistreated as a result of his male gender, when in fact the College would and did do so.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for the following relief:

(a)     Find, determine and declare that the College's business practices violate the UTPCPL;

(b)     Award actual and statutory damages, including restitution, treble damages, attorney fees and costs; and

(c)     Grant any other appropriate relief.

**COUNT VII:**
**Violation of 42 U.S.C. § 1983**
**14th Amendment**

98.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

99.     42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

100.    As described more fully above, the agents and employees of the College, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair hearing.

19

101.    The Defendant employees' and agents' misconduct also directly resulted in the unjust finding of responsibility for violation of the College's Sexual Misconduct Policy, thereby denying him his constitutional right to a fair hearing, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102.    As a result of this violation of his constitutional right to a fair hearing, his constitutional right of freedom of association, and his constitutional right to cross examine and question his accuser, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

103.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

### COUNT VIII:
### Violation of 42 U.S.C. § 1983
### 1st Amendment

104.    The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

105.    The agents and employees of the College, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff his First Amendment rights of freedom of association by unilaterally imposing a No Contact Order without any due process whatsoever to Plaintiff.

106.   The University's violations of 42 U.S.C. § 1983 were the actual, direct, and proximate cause of injuries suffered by the Plaintiff as alleged.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT IX:
### Violation of 42 U.S.C. § 1983
### 6th Amendment

107.   The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

108.   The agents and employees of the College, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff his Sixth Amendment rights to confront and cross examine his accuser.

109.   The University's violations of 42 U.S.C. § 1983 were the actual, direct, and proximate cause of injuries suffered by the Plaintiff as alleged.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff John Doe respectfully requests that this Honorable Court:

1.   Immediately enjoin the College from continuing to impose the disciplinary process against the Plaintiff;

3321593.1

00000.361

2.   Allow Plaintiff to return to campus to finish his fourth and final year of his undergraduate program at the College as a member in good standing of the College Community;

3.   Order the College to set aside the investigative team's finding that the Plaintiff is responsible for violating the College's Sexual Misconduct Policy and the sanctions of suspension and any related notation on his academic records;

4.   Require the College, if it wishes to proceed with a disciplinary process, to appoint a new, independent investigator from outside the College to determine whether there is sufficient basis to conduct a full investigation and, if so, to conduct a fair and complete investigation, including addressing the issues raised by the Plaintiff in this Complaint;

5.   Require the College to change the Disciplinary Procedures to be consistent with due process;

6.   Award the Plaintiff compensatory damages in an amount to be determined at trial, including without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of education and professional opportunities, loss of future career prospects, and other direct and consequential damages;

7.   Award prejudgment interest;

8.   Award attorney fees and costs pursuant to statutory or common law doctrines providing for such award; and

9.   Grant such other and further relief that the Court deems just and proper.

### Demand for Jury Trial

John Doe respectfully requests and demands a jury trial on all issues so triable.

3321593.1

00000.361

Respectfully submitted,

Date: June 17, 2019

/s/ Michael J. Neary
Michael J. Neary (Bar No. 17396)
Joshua C. Schmand (Bar No. 19418)
LERCH, EARLY & BREWER, CHARTERED
7600 Wisconsin Ave, Suite 700
Bethesda, Maryland 20814
(301) 657-0740 (phone)
(301) 347-1790 (facsimile)
mjneary@lerchearly.com
jcschmand@lerchearly.com

*Local Counsel for Plaintiff*

J. Bryan Tuk, Esq. (*pro hac vice* pending[2])
Tuk Law Offices
PO Box 638
Kennett Square, PA 19348
(610) 393-6763 (phone)
bryan@tuklaw.com

*Lead Counsel for Plaintiff*

---

[2] Contemporaneously with the filing of this action, Local Counsel filed a Motion for Admission of *Pro Hac* Vice.

3321593.1                                                          00000.361