IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| JOHN DOE, | ) |
|                 Plaintiff, | ) |
| v. | ) Civil Action No. CBD-19-1760 |
| BOARD OF TRUSTEES OF ST. MARY'S COLLEGE OF MARYLAND, | ) |
|                 Defendants. | ) |

## MEMORANDUM OPINION

Before the Court is Defendant's Motion to Dismiss Or, In the Alternative For Summary Judgment ("Defendant's Motion")(ECF No. 13). The Court has reviewed Defendant's Motion and the opposition and reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons that follow, the Court hereby GRANTS Defendant's Motion to Dismiss.

### I.    The Legal Standard for a Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant contends the claims should be dismissed due to a lack of subject matter jurisdiction. Defendant also asserts the right to similar relief pursuant to Fed. R. Civ. P. 12(b)(6) due to Plaintiff's failure to state a claim upon which relief can be granted. Under either prong, the Court will accept the facts as asserted in the Complaint as true, but relevant Supreme Court caselaw requires more. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) makes clear that the complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action," without "further factual enhancement." Moreover, Ashcroft v Iqbal, 556 U.S. 662, 678 (2009) states that the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face'." Last, in ruling upon the motion to dismiss, the Court can consider documents attached to the Complaint, particularly a verified complaint like the one that is pled here. See Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## II. Defendant's Claim of Sovereign Immunity Prevails Over the Breach of Contract Claim Alleged in Count I.

The parties agree that Defendant is entitled to assert the defense of sovereign immunity because it is an arm of the state government. Sovereign immunity can be waived, and the Maryland statute sets forth the parameters of when said waiver can occur.

> [T]he State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, . . . based on a written contract that an official or employee executed for the State . . . while the official or employee was acting within the scope of the authority of the official or employee.

Md. Code Ann., State Gov't §12-201(a)(LexisNexis 2014). The question here is whether Defendant has waived immunity consistent with the method permitted by the statute. The Court finds no waiver of immunity has occurred.

The clear language of Stern v Bd. of Regents, 380 Md. 691, 846 A.2d 996 (2004) requires far more than policy guidelines set forth in booklets, forms or manuals to be necessary to create a "written contract" as contemplated by the statute. "There must be a signature from a duly authorized person empowered to execute the contract in question." Id. at 1014. See also, Keerikkattii v. Hrabowski, Civ. A. No. WMN-13-2016, 2013 WL 5368744, at *8 (D. Md. Sept. 23, 2013). Nor will "performance" serve as a substitute for a "written contract." The clear words of the statute do not allow for such a construction.

Plaintiff has not identified a "written contract" signed by an authorized official or employee of the State. Of the three items attached to Plaintiff's verified complaint, none satisfy the standard. Said items being: 1) St. Mary's College of Maryland Policy Against Sexual

2

Misconduct (the "Policy")(ECF No. 4-1); 2) St. Mary's College of Maryland Procedures to Resolve Complaints of Sexual Misconduct against a Student (the "Procedures Manual") (ECF 4-2); and 3) St. Mary's College of Maryland Anti-Harassment Statement (the "Anti-Harassment Statement") (ECF 4-3).

As the resolution of the immunity question is dispositive, there is no need to address the related question regarding the timeliness of the filing of suit and the limitations period. Accordingly, the breach of contract claim must fall. Defendant's Motion as to Count I is GRANTED.

### III. There is No Factual Support In The Complaint For Plaintiff's Title IX Claim Set Forth in Count II.

Title IX protects citizens against discrimination in education when institutions receive federal funding. The statute provides that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a) (2017). There is no dispute that Defendant is subject to the requirements of Title IX.

Plaintiff contends in the Complaint, ¶ 63, that Defendant engaged in "selective enforcement" and reached "an erroneous outcome." The Complaint goes on to assert that Defendant treated Plaintiff unfairly because of his sex and violated basis due process protections. Despite hurling numerous allegations from ¶63-71, they all are mere conclusory statements devoid of factual content based on alleged misdeeds of Defendant.

The elements of a Title IX "erroneous outcome" claim are:

    (1)    showing that Plaintiff was subjected to a procedurally flawed or otherwise flawed proceeding;

    (2)    which led to an adverse and erroneous outcome; and

3

(3) involved particular circumstances that suggest gender bias was a motivating factor behind the erroneous finding.

Doe v. Loh, Civ. A. No. PX-16-3314, 2018 WL 1535495, at *8 (D. Md. Mar. 29, 2018), aff'd 767 F. App'x 489 (4th Cir. 2019).

As this Court stated, more than conclusory statements must be offered; facts must be offered which support "a plausible inference that the proceedings were influenced by gender bias." Id.

Plaintiff's Opposition raises only two contentions: 1) that the procedures were flawed because the investigator also served as the decision-maker; and 2) a suggestion of bias on the part of the investigator due to activity not alleged in the Complaint. Given Plaintiff's lack of a substantive response to Defendant's Motion, his "selective enforcement" argument is waived. Additionally, the Court will not consider activity not alleged in the Complaint for purposes of the motion to dismiss.[1]

The lack of factual substance is precisely the defect which led to this Court's dismissal of claims in Doe at *10. Anyone can allege misconduct, but the Court is obligated to dismiss alleged misconduct claims when they do not pass the plausibility test. Here, there are no facts to put to the test. Nothing more than "black letter law" has been offered, and more is required to overcome Defendant's Motion.

The first element Plaintiff must satisfy is that he was subjected to a "procedurally flawed" proceeding. Yusef v. Vassar Coll., 35 F. 3d 709, 715 (2d Cir. 1994). Plaintiff suggests

---

[1] Even if the Court were to consider these unpled contentions, they do not rise to the level of plausibility. They do not create the inference that the educator's participation in the campus event somehow equates to a discriminatory animus here. Attending an event advocating the prevention of sexual violence, and later commenting about such as reported here, simply does not equate to an endorsement of an anti-male bias. An amendment of the Complaint would be of no benefit.

4

that the "procedural flaw" is that there is a requirement that the "investigator and the judge be different people." Pl.'s Opp'n 12. Plaintiff takes issue with Michael Dunn, Defendant's Title IX Coordinator also serving in the role of the investigator. Plaintiff contends this duality conflicts with an explicit prohibition of set forth in the Procedures Manual. <u>See also</u> Compl. ¶41. Based on this premise, Plaintiff contends that the conduct here "shows an intentional and blatant disregard" for the Procedures Manual which requires the "Title IX Coordinator and the Investigator to be separate persons." Pl.'s Opp'n 12. The Court fails to appreciate the premise or the supposed "anti-male bias."

While Plaintiff refers generally to the Procedures Manual, he does not refer to the actual language in the Procedures Manual that might govern. The Court's review does not reveal the language Plaintiff relies upon. <u>See</u> Procedures Manual, p. 9. Nor does the Court perceive a causal link between the complained of conduct and gender bias. <u>See</u> <u>Haley v. Virginia Commonwealth Univ.</u>, 948 F. Supp. 572, 578 (E.D. Va. 1996).

Plaintiff's failure to plead or argue facts to satisfy the plausibility concerns of the Court permeate every element of this claim. There are no facts to support the notion of the second or third elements that the conduct led to an adverse and erroneous outcome and involved particular circumstances that suggest gender bias was a motivating factor. <u>Doe</u>, at *8. Accordingly, the Court finds a failure on Plaintiff's part to show the proceeding resulted in an "erroneous outcome" under Title IX. Defendant's Motion as to Count II is GRANTED.

**IV.** **There is No Factual Support In The Complaint For Plaintiff's Negligent Selection, Training or Supervision Claim Set Forth In Count III.**

As with Plaintiff's contention for Count II, this claim also relies on Plaintiff's belief that it is improper and contrary to the Procedures Manual for the same person to serve in the roles of Title IX Coordinator and Investigator during a single investigation. For the reasons set forth

5

above, the Court disagrees. The Court does not find a plausible claim for negligence in selection, training or supervision.

Plaintiff correctly notes that negligence requires proof "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of duty." Doe v. Salisbury Univ., 123 F. Supp. 3d 748, 762 (D. Md. 2015). However, neither the Procedures Manual nor other documents identified by the parties creates a duty of care which Defendant owes to Plaintiff. Moreover, as Defendant notes, the state courts have made clear for decades that in the area of education, negligent hiring of incompetent staff is not actionable in Maryland. James v. Frederick Cnty. Pub. Schs., 441 F. Supp. 2d 755, 759 (D. Md. 2006). The mere recitation of the elements of the cause of action does not equate to alleging sufficient factual information to satisfy the standard of plausibility. Plaintiff's sole allegation relates to his concern about dual roles being filed by one person. There is no allegation of incompetence or of the knowledge of incompetence by the employer. See Williams v. Wicomico Cnty. Bd. Of Educ., 836 F. Supp. 2d 387, 400 (D. Md. 2011).

Accordingly, the Court finds a failure on Plaintiff's part to set forth plausible facts to show negligence. Defendant's Motion as to Count III is GRANTED.

**V.  Plaintiff's Claim for Intentional Infliction of Emotional Distress Set Forth In Count IV Is Barred By Sovereign Immunity.**

The parties agree that Defendant can properly assert a claim of sovereign immunity. Pl.'s Opp'n 9; Def.'s Mem. in Supp. 17-18. The real question is whether sovereign immunity is applicable to claims alleging intentional misconduct, such as Plaintiff's claim for intentional infliction of emotional distress ("IIED") set forth in Count IV of the Complaint. Compl. ¶¶ 78-

83. Plaintiff agrees that "sovereign immunity is not waived in situations where its personnel committed tortious acts or omissions with malice or gross negligence." Pl.'s Opp'n 16.

The prevailing statues are Md. Code Ann., State Gov't § 12-104(b) and Md. Code Ann., Cts. & Jud. Proc. § 5-522(a)(LexisNexis 2013). The former is part of the Maryland Tort Claims Act ("MTCA") and the latter speaks to the limitations of the waivers of state immunity. The concept of sovereign immunity is that the State cannot be sued unless it consents to do so. The MTCA is an expression of consent. The MTCA waives sovereign immunity for certain actions, yet expressly retains sovereign immunity for items covered by Cts. & Jud. Proc. § 5-522(a). For purposes here, there is no waiver for "any tortious act or omission of State personnel that: (ii) Is made with malice or gross negligence." Id., at § 5-522(a)(4)(ii). Simply put, if state personnel commit a tortious act with malice or gross negligence, the State of Maryland cannot be held liable.

Plaintiff takes aim at the language of the statute. Plaintiff contends that his claim for IIED alleges neither "malice" nor "gross negligence" and is therefore actionable. The Court disagrees.

"Under Maryland law, malice refers to conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Stutzman v. Krenik, 350 F. Supp. 3d 366, 387 (D. Md. 2018), quoting Lee v. Cline, 384 Md. 245, 863 A.2d 297, 311 (2004) (internal quotes omitted). While "malice" is not an element of the claim of IIED, it satisfies the legislative intent of protecting the State from suits based upon alleged intentional misconduct that is required by the IIED elements. The essence of IIED claims is to "intentionally" bring about "injury." By definition, an "evil or wrongful motive" is also at play, as well as "knowing and deliberate wrongdoing." To prevail on an IIED claim, Plaintiff must

7

allege "(1) the conduct at issue must be intentional or reckless, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the conduct and the plaintiff's emotional distress, and (4) such distress must be severe." Jones v. Family Health Ctrs. of Balto., Inc., 135 F. Supp. 3d 372, 383 (D. Md. 2015). The conduct necessary to establish an IIED claim comports with the Maryland definition of malice.

Similarly, the IIED claim and the factual underpinnings asserted here satisfy the substantive language for gross negligence. Gross negligence means "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." Murphy-Taylor v. Hofmann, 968 F. Supp. 2d 693, 739 (D. Md. 2013). The determination of malice or gross negligence is not governed by the label of the claim filed, but by the conduct required. Even in Murphy-Taylor, there were no claims titled malice or gross negligence. The Court looked to the elements and the factual foundations and found the existence of gross negligence where mere negligence was alleged.

Plaintiff alleges and argues that Defendant's motivation was due "external pressure to protect accusers." Compl. ¶ 34; Pl.'s Opp'n 17. "Motivation" is not the issue, whereas "intentional" misconduct is. Here, Plaintiff must allege and provide facts that show intentional conduct in order to prove IIED. Plaintiff makes this explicit argument stating, "Plaintiff sufficiently alleged that the College's conduct of intentionally labeling him as a rapist. . . ." Id. (emphasis added). Plaintiff additionally claims, "the College's intentional actions have branded Plaintiff with a false scarlet letter." Id. at 18 (emphasis added). Such allegations and/or proof of intentional misconduct removes this claim from consideration by the Court. Defendant enjoys

8

the protection of sovereign immunity for the IIED claim asserted here. For this reason, Defendant's Motion is GRANTED as to Count IV.

VI. **There Is No Factual Support In The Complaint For Plaintiff's Intentional Infliction of Emotional Distress Claim Set Forth in Count IV.**

As stated earlier, in order to prevail on an IIED claim, Plaintiff must prove "(a) intentional or reckless conduct that is (b) outrageous and extreme (c) causally connected to (d) extreme emotional distress." Vance v. CHF Int'l, 914 F. Supp. 2d 669, 682 (D. Md. 2012). In order to survive Defendant's Motion, Plaintiff must set forth sufficient facts to plausibly support each element.

Here, Plaintiff contends that Defendant engaged Plaintiff in a disciplinary process which resulted in the wrong outcome. While Plaintiff suggests the conduct involved was "extreme and outrageous," he has not provided factual support. The Court has already addressed and rejected any factual theory based upon an alleged non-compliance with the Procedures Manual. Plaintiff must provide more.

"In order to satisfy the element of extreme and outrageous conduct, the conduct must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. Plaintiff asserts that he was denied the opportunity to face his accuser and that this procedure is so "extreme and outrageous" that it offends our notions of fairness. Defendant provides case law for the view that the disciplinary process employed here cannot be viewed as "extreme and outrageous." In Uzoechi v. Wilson, Civ. No. JKB-16-3975, 2018 WL 2416113 (D. Md. May 29, 2018), this Court found that in a similar school disciplinary context that holding the hearing in the absence of the accused was not beyond all possible bounds of decency. Id. at *11. Plaintiff's outrage over the inability to face

9

his accuser equally does not satisfy the required standard.  See also Doe v. Loh, Civ. A. No. PX-16-3314, 2018 WL 1535495, at *7 (D. Md. Mar. 29, 2018).

The Court does not find Plaintiff's contentions plausible.  Defendant's Motion as to Count IV is GRANTED.

### VII.    Plaintiff Has Elected to Withdraw Several Claims.

Upon further review, Plaintiff has withdrawn several claims.  These claims are: Count V – Negligent Infliction of Emotional Distress; and Count VI – Unfair Trade Practices and Consumer Protection Law.

### VIII.   Sovereign Immunity Prohibits the Claimed Prosecutions for Plaintiff's Section 1983 Claims Alleged in Counts VII Through IX.

Under Counts VII through IX, Plaintiffs asserts 42 U.S.C. § 1983 claims for Defendant allegedly depriving Plaintiff of the "right to a fair hearing" resulting in an "unjust finding of responsibility," the right of "freedom of association," and a right to "confront and cross examine" his accuser.  Compl. ¶¶ 98-109.  Plaintiffs contentions are lacking legal support to survive Defendant's Motion.

Whether Defendant's Motion is based on Fed. R. Civ. P. 12(b)(1) or (6), Eleventh Amendment sovereign immunity prohibits the consideration of these Section 1983 claims in federal court.  The U.S. Constitution states that "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."  This language reflects the dignity and sovereignty of the individual states in the union.  To the extent any state allows itself to be sued, it can dictate the terms and location.  Only in very select instances has our systems of laws allowed otherwise.

"[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 649 (4th Cir. 2018). In the parlance of a Rule 12(b)(1) motion, Defendant's challenge is a facial one, in that it relies upon and accepts as true the jurisdictional assertions by Plaintiff in the Complaint. It is Defendant's burden to demonstrate the immunity asserted. Hutto v. South Carolina Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014). Defendant has satisfied its burden of proof.

The Complaint acknowledges that Defendant "is a public college organized under the laws of the State of Maryland." Compl. ¶ 24. Plaintiff concedes in his opposition that "[t]here is no doubt, and the parties in this case do not dispute, that [Defendant] is considered to be an arm of the State Government for the purposes of asserting the defense of sovereign immunity. Md. Code, Educ. § 14-404(h)." Pl.'s Opp'n 9. In the absence of a waiver, Defendant enjoys sovereign immunity.

The Section 1983 claims here are presented as a direct action against the State of Maryland through its instrumentality the Board of Trustees of St. Mary's College of Maryland. Section 1983 claims do not provide "a federal forum for litigants who seek a remedy against a State," or state officials acting in their official capacities, "for alleged deprivations of civil liberties." Keerikkattil v. Hrabowski, Civ. A. No. WMN-13-2016, 2013 WL 5368744, at *4 (D. Md. Sept. 23, 2013) quoting Will v. Michigan Dep't of State Police, 491 U. S. 58, 66, 71 (1989); see also Bd. Of Tr.'s of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court.")

Plaintiff's opposition is consumed with articulating governance and policy considerations by the U.S. Department of Education under Title IX.  The Complaint speaks to alleged violations of Section 1983.  Plaintiff makes no effort to address the copious case law regarding Defendant's immunity arguments.  Given the clarity of the law on the question of immunity, there is no need to address the other assertions or defenses made.  Defendant's Motion to dismiss Counts VII through IX is GRANTED.

**IX.    Conclusion**

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss for Claims I, II, III, IV, and VII through IX.  Plaintiff has withdrawn Claims V and VI.  Accordingly, all claims set forth in the Complaint are now dismissed.  A separate Order will follow.

November 20, 2019                                                         /s/
                                                                  Charles B. Day
                                                                  United States Magistrate Judge